And when you resume your seat, you may call the next case on the court side. Your Honor, this case on page 17-0996, and re Estate of Mary Baldassarre. First of all, I would like to thank the Estate of Mary Baldassarre. On behalf of the respondent, Mr. Mark T. Schmidt. On behalf of the petitioner, Mr. David A. Martin. Also on behalf of the petitioner, Mr. Matt Lee. Thank you. And on behalf of the respondent, Mr. Schmidt, you may proceed. You may proceed. Your Honor, good morning. Good morning. My name is Mark Schmidt, and I represent the Apollo on Arthur Earhart. The Apollo, I respectfully request this Court reverse the trial court's finding that the judge, Arthur, would be in contempt for several reasons. First, the contempt proceeding was, in reality, criminal, not civil in nature, and was conducted in such a fashion that Arthur's due process rights were not protected. Second, even if the proceeding is measured against civil contempt standards, they don't result in an order that, within its four corners, contained a valid purge provision, making the order void. We also respectfully request that the Court reassign the matter on reassignment to another judge because of the Court's prejudicial conduct and because of its personal bias. As part of this, I would also ask leave to discuss the Nahelko decision, which came down on July 10th. I believe it's distinguishable, but I will address that. Mr. Schmidt, let me ask you a special question. Is it your position that your client was erroneously held in criminal contempt as opposed to civil? Yes, Your Honor. Okay. And why is that? Because you look at the order itself to determine whether or not the proceeding is criminal or civil. Looking at the order, in turn, asks whether or not there is any way in the claimed purge provision to actually do something that will eliminate the contempt sanction, as in the Morse case. If there is a sanction that is going to be carried out, then it's criminal. And so, perversely, the analysis is backward from the order. In this case, if Mr. Earhart produced whatever documents it is, items he's supposed to have had and produced, we don't believe that's proved, and he does it one day in his 30-day sentence, he still serves the 30 days. That's what the order says. Every order did have a purge provision in it, though, correct? A claimed purge provision, but I believe in an effective one. It did mention the word purge. Now, this case, there was – he never – we never got to the point where he served the 30 days, correct?  We filed them and settled them. Well, I mean, theoretically, another order, an addendum order, could have been entered upon his going to jail that he could purge himself during that time period, correct? But then it violates the requirement that it be within the four corners of the document. Within the four corners of the document, we have to know what it is that we need to do to purge. I'm saying if the order was entered before he actually went to jail, before he spent one second in jail, if there was an addendum to this order or a new order entered that he's going to start serving the 30 days now, but he can purge himself by coming up with the property in some time – you know, any time after that, any time after he begins serving his sentence. Your Honor, I'm not trying to avoid the question, but I don't think that can be done in this case because it's never established that Arthur took anything. Secondly, it's never been established what was really missing, the supplemental inventory, which was made reference to but not made part of the order, had, I think, 45 items. We documented 13 in our brief, two of which, for example, trucks. Everyone knows were in existence, and yet those were items on a list that we were supposed to produce or be held in contempt. Those were in the hands of the guardian ad litem. Of course, we couldn't produce them, and that leaves the additional problem. If, to do something, you have to turn to a third party to actually do the action which in turn causes the purgation, that's void as well. Well, impossibility is a defense to contempt, and if it was impossible for those matters to be turned over, why couldn't that be identified? I'm sorry, Your Honor. Why couldn't it be identified? Why wasn't it identified so that they were removed from this inventory list? Your Honor, the court entered the order. We asked specifically for the court to give us a list of the things that we supposedly took we needed to return, and that was refused. Without that, we can't move forward. What we're being asked to do is guess as to which of these 45 items were in the house at the time of the appropriate orders, were taken by Mr. Earhart, and were not returned. Other people had access to the house. Mr. Earhart had keys, but many people had codes to enter and exit that house. Denise Bosch testified that she was in the house on five occasions, that she saw trucks come and pull things away. There's never been an opportunity to set a proper purge provision because there's never been an identification of what it was Mr. Earhart took, which in turn is because it was never done. There's not an identification of what he had, took, and then didn't bring back. So what specific relief or remedy are you seeking from us? As to this case, we'd ask it be remanded because even though the ward, the putative ward I should say, is dead, the court took the guardianship, the action for a claimed guardianship, there was never guardianship established, and has rolled it into the probate action, but used the guardianship as the predominant number. Because of that, we still have a live case, and we're asking for the court to vacate the contempt order. We, to explain this to the court, we earlier repealed the combination of the probate action and the guardianship action, but our request that it be made the subject of this court's consideration was denied. All right. So you're saying that this somehow transmuted into criminal because the nature of a civil was coercive with a purge. You're saying there really is no purge in here. It's illusory, correct? Yes. Okay. Well, why couldn't we affirm the finding of indirect civil contempt and simply remand it to set a proper purge? Well, then you deny Mr. Earhart his constitutional rights, the right to have a specific set of charges laid out, the right to answer those. The right against self-incrimination, and the right to be criminal. Well, isn't that contempt? Yes. No, but where contempt is criminal, and you measure that by the order, then those are the rights. You would go back and correct me. It wouldn't necessarily be criminality. I think we can all agree, quite frankly, that this should have been a civil contempt, correct? If there was going to be a return of items and they weren't returned, that's basically the nature and purpose of the civil. It's to coerce something. So you've argued now that somehow the Court erred because it imposed, in essence, a punitive criminal sanction. No, actually, what we argue is that this morphed into a criminal contempt. I'm sorry for that. I misunderstood. Because it was a civil petition. Civil petition. And there was a civil – I mean, the judge made a specific civil contempt finding, indirect civil contempt finding. Right. But you're saying it morphed based upon the 30-date determined sentence. Well, and look at the Morse case. Exactly the same things happened. And there's been no response on that. In the Morse case, there were several findings, five of contempt. Four were indirect civil. But in each instance, there was an order to do something. And if it wasn't done by a set date, then there was a 7-day to 30-day sentence pending. And this Court made very clear that at the minute, it's impossible to perch. In other words, if that sentence is determinate, then it's criminal. And then you have to work backwards and say, because it was termed into a criminal matter, were the proper protections afforded a person who was, in essence, being faced with a criminal contempt charge? And most egregiously, without knowing it. So it can't go back simply for the addition of a perched provision because it was a criminal proceeding. And so procedurally, it's flawed, defective, because the burden shifted in an indirect civil contempt. You're saying the whole proceeding was void at initial, basically, is that what you're saying? What I'm saying is when the 30-day order was made, and the language, let me get the exact language. Our Fair Heart has ordered to serve 30 days in DuPage County Jail for failing to purchase deliberate and ongoing civil contempt. The minute that happened, it was confirmed that this was a criminal contempt proceeding. And then, looking backwards, as happened in Moore's case, the Court has to ask, were the proper protections afforded a person for a criminal contempt proceeding? And they weren't. So, and Mihalko, do I have that name right there on me? Mihalko, I'm sorry. Mihalko, I think, is a little different for this reason. In Mihalko, two matters were presented. One was discovery and the other was contempt. And by the time it got to this Court, the question was whether or not there was actually still a post up on site that could be made the subject of withdrawal or whether there wasn't at all. The Condemnor said, in fact, it had been, the trial court didn't say that in the court as it's obligated, had to presume that everything was correct at the trial level. So there wasn't a preservation for the Court to analyze whether or not there was civil or criminal contempt, although Mihalko did mention that in moving forward. In that case, since the opportunity to argue criminal contempt had been waived because the epilogue hadn't provided the Court with an appropriate record, setting back for the addition of a purge provision would be fine. But here, we have circumstance where there was a criminal contempt proceeding regardless of its label. And the cases are clear that the label doesn't matter. So, Mr. Earhart was found criminally responsible using civil processes. Let's talk about the issue of the case that does get remanded. You have contended that the trial judge was personally biased against your client and a different judge should be assigned. Probably the best example, Your Honor, is after a motion to impose an appeal bond was made in front of the trial court and it was denied orally. And after that motion for an appeal bond was made in this Court and denied, which resulted in an order that was sent to the trial court, the Court entertained now the third motion to set an appeal bond. And by that time, it's reasonable to assume that the trial court knew that that motion was based on a case, which wasn't just overruled. The Supreme Court decision was vacated. It dealt with the wrong Supreme Court rule number. It dealt with a money judgment. We don't have a money judgment here. And yet, despite the fact that this Court had said the petition for an appeal bond is denied and sent that to the Court, the Court not only entertained the motion but required it to be fully briefed. There can't be any reason for that to be done since this Court has already ruled and since the trial court has the absolute obligation to follow the orders of this Court other than to punish Mr. Earhart. It wouldn't have benefited our colleagues at all. It could only hurt Mr. Earhart. The other two things that I think support that is the way the procedures were handled. In December, the Court decided that there would be a declaration of the disability of now the decedent. He stated that there was no need for a hearing. He listened to the guardian ad litem. He listened to some of the attorneys speak. There was no hearing. No one was under oath. There were no documents. There's no medical information in the file. And yet, he determined that he could make a disability finding. Now, at that point, there was a- Your client had not had, or the decedent had not had her surgery yet when this was done? The surgery happened, I believe, quite early on, but I can't remember the exact date. And your client knew that? Your client knew the nature of that surgery? No, he did not, Your Honor. He knew that there was some kind of brain surgery. One that he didn't know because an order which required him to be given the doctor's opinion within 24 hours of them seeing the doctor was never honored. That's yet another reason that we believe there's bias. Even though there wasn't a ward ever appointed, even though there wasn't a hearing scheduled, even though there wasn't a clear and convincing standard that was met, there was a determination of disability and citations to discover assets were going ahead, a procedural discovery tool. When we asked for discovery, when we asked to get the information about Mary's medical condition, there was a motion to vacate that we weren't allowed to get at. But Mary was spending time with your client. No, no. I thought that she was with her family during the week and would come and spend some time with him on the weekend. That is not the way it worked out, Your Honor. That's the way it was ordered, but that's not the way it worked out. That's on the record, but it didn't work out that way. There was not contact between Mr. Earhart and the decedent for probably the last nine months of 2017. I'm the second attorney in the case. That's my belief. And so he never saw her in the hospital. He was never allowed to go to the hospital. At an early point, Your Honor, he was, but then he was not allowed to do that. And, in fact, that's, I believe, and I wasn't there for the order, but that's part of the genesis of the order saying that since Mr. Earhart couldn't accompany her for medical visits, he would get medical information within 24 hours of its happening. Never. It didn't happen. We did the motion to get it. It's discovered. We don't get it. That motion's denied. On what basis? Well, there was a motion made by my colleagues, and I don't remember the exact reason for the denial. I'm sorry, Your Honor, I don't. Did the evidence of the trial court's bias against your client arise after the 12-7 order? 12-8, I'm sorry, 12-8 order? In some instances before, in some instances after, in some instances you had to compare them. For example, the entertainment of the motion to set the appeal bond happened after. The discovery matters happened before. Some happened before and after. So you're saying there was clear evidence of bias even before the December 8 order? Well, and it became clear in certain instances afterwards. So, for example, when in March of 2017, and this is in our brief, the court says that it's not a four-blanc conclusion. May I finish my statement up there? Yes. That it was a four-blanc, it wasn't a four-blanc conclusion that there would be a finding. There might be a guardianship. It might be limited. There may be no guardianship at all. That's what he said in March when, ironically, my predecessor counsel said, why don't we just move to a finding? In December, suddenly that's completely ignored. And what the judge said was necessary, that there be a hearing, that there be a determination, was ignored. And in an impromptu fashion, at the tail end of the hearing, disability is found. Not what type, not for property or for health care. There was never a ward established. There was never a guardian applied on temporary or a guardian temporary or plenary appointed. Well, I mean, then September 22 of 17, that's when the trial court found your client in contempt of court. And then the case kept coming back to court for his compliance in a purge several times until we finally get to the 12-8 order where the judge sets this 30-day sentence but then gives him another seven days. I mean, doesn't that kind of cut against your bias argument that he's giving him time after time to purge this contempt? Time to return what, Your Honor? Time to return what? And that's the critical issue here. There was never an indication that a specific item, keep in mind five or six people at least, have access to this property. People have taken things out of the property. Ms. Bosch indicated that she took things out. This happened after the discovery orders. And so we asked at the time the rule hearing took place, please tell us what you say we took after the order, not before, so that we might return it. Far from giving us additional chances to purge, we asked specifically as part of that hearing. Mr. Bernanke and I were there. I stood up and I said, Your Honor, we need to know this. It's in the record. And our request was ignored. So if you give somebody two days or 200 days but don't tell them what they're supposed to do, I don't think the passage of time could cut against them when they don't do it. All right. Thank you, Mr. Schmidt. You'll have time to address the Court on rebuttal. At this time, Mr. Martin, we call on you to give your argument on behalf of your respective clients. Okay. Good morning, Your Honors. May it please the Court. We've just heard from Mr. Schmidt, who represents the account in this matter, the basis for this appeal. If you can keep your voice up so everybody can hear you, please. I'm sorry, Judge. We just heard from Mr. Schmidt, who just set forth the three arguments for his appeal. The first of these arguments is that he believes that a civil contempt proceeding, which was initiated as civil contempt and carried out, as evidenced numerous places in the record, thoroughly carried out as a civil contempt proceeding, the judge took meticulous pains, even going on the record, to make specific statements that he was attempting to follow the procedure for civil contempt. Mr. Schmidt submits— Does more supply to this situation based upon the 30-day order? Your Honor, I don't believe more supplies for several reasons. The first, I guess, that I would move into, and I was going to get to this later, but I'll address Your Honor's question here. Simply put, I don't—in a sense, I almost feel that the appellant's appeal here on that point is almost premature. It's almost not right because the 12-8 order was based on the 12-6 hearing. And that afforded Mr. Earhart, at the 12-6 hearing, the trial court afforded him seven additional days to purge. And so there was a set court date for December 13th, and that would have been the ultimate order here on the civil contempt. And there's no doubt in my mind that, but for the fact that Mr. Earhart appealed on the 11th, and this Court entered a stay of freezing all proceedings at the trial court the morning of the 13th, that there would have been a final prove-up that was held. That was the basis of the 12-8 order. That there was one—the trial court was giving Mr. Earhart a final opportunity here to purge before any kind of punishment at all was imposed. And I think that speaks to the nature of the trial court's intention here with regards to the civil contempt. If you read the order, I mean, it's pretty specific, that he's going to serve 30 days, that order is stayed until 12-13, to allow him to purge. So if I'm—I mean, if he doesn't purge before 12-13, he goes in for 30 days. And I— It doesn't sound like criminal contempt because there's a specific sentence imposed. Generally, in civil, one of the distinguishing features is it's remedial. It's to coerce something. It's not a sanction for misconduct. Judge— This argument isn't transmuted into criminal contempt. So tell us why it wasn't criminal contempt. Your Honor, I do understand your point. And I understand the Morris case says what it says. I would point out respectfully that it was the only case on that point cited by the appellant in his brief. I believe the overwhelming authority on the contempt cases, including cases cited by the appellant, such as O'Malley and Vest, do speak to the fact that what's determinative in civil contempt is the intention of the trial court in imposing the sanctions and looking to discern is the intent of the trial court here to coerce the contender into compliance with the court's orders or is the intent of the court to punish. So you were anticipating a further order on 1213 that would spell all this out. That's correct, Judge. My argument is that the 1208 order was the penultimate order in this process. And I think the fact that there were multiple orders here, Your Honors, speaks to the fact that this was inherently civil contempt in nature. The 922 order set the purge conditions. The 1208 order found there was a failure to purge and referenced the purge conditions of the 922 order, and it set it for a final prove-up on whether Mr. Earhart could purge to be heard on 1213. And we never got to that point. Well, does the order say a prove-up? Or does it say it's going to date it for steps? Well, Your Honor, I believe that it says enforcement of the order is to stay until December 13, 2017 at 9 a.m. to allow Mr. Earhart to purge his contempt as per the terms of the September 22, 2017 order. And I think it would have been incumbent on the trial court, I think implicit in that language, is the court would have had to make a finding on 1213 that Mr. Earhart had again failed to purge before any incarceration or any other sanction would have been imposed. But why would he then change that order? Why would the trial court change that order if that's the case? What was the incentive to change the order? Your Honor, I'm not saying that he would have changed the sanction. I think at this point the trial court had deduced that some kind of a coercive sanction was necessary to ensure compliance. But I do think that it's reasonable that the actual order that would have sent Mr. Earhart to jail would have probably more specifically fleshed out the purge conditions relevant to his incarceration stay. But it probably wouldn't have changed for 30 days. So how is this civil contempt where if Mr. Earhart decided, I'm just going to sit for 30 days, actually maybe 15 because I think he would make it day for day on this, but I'm going to sit for 15 days and just keep all the stuff and then I'm free and clear. So how is that coercive if the 30-day order stands? Well, Your Honor, I think what the trial court was intending here and what I think would have been more fully fleshed out on a 1213 order is that what the trial court's intention was not to afford a hard sentence of 30 days whether Mr. Earhart perished or not. I think the intention here was that had he perished, the incarceration would have terminated. You're making some logical points, but the problem is when you think about it, that might have been the original intent, but that isn't the way the orders ended up reading. You can't have a civil contempt and impose a specific jail sentence. The twain do not meet under the case law you're aware of. And I understand your point, Your Honor. I would just again respond to my point that I think it's reasonable to construe the 12A order as a penultimate order and even assuming for purposes of argument that that's correct, that the language in the 12A order is insufficient, I think that, again, I go back to my point that the argument by the appellant on this is just simply not right because we never got to the 1213 order. We never got the order that actually was going to incarcerate Mr. Earhart. He could have perished. By the court's order, 12A, he could have theoretically perished within those seven days. So we never got to the ultimate order that I think this appeal really should have been about. That would be true, but let's talk about where we go from here. That's why he asked opposing counsel, if we affirm the finding of indirect civil contempt, vacate the sentence and then have a continuing obligation to purge, his objection was, yeah, that's well and good, but we can't because we don't know what we're supposed to return. How do you respond to that argument? He falls back on that subtle proposition. Yeah, that's all well and good, but you can give us a purge, but if we don't have the means and we don't know what we're supposed to return, how do we ever purge ourselves? So what do you say in response to that? So with regards to the validity of the purge provision, Your Honors, I think it's very clear that Mr. Earhart had multiple opportunities to purge. Purge what? That's the very simple question. What was he to purge? And I'm getting to that, Your Honor. So with regards to that, the thing that I would point to first is the two inventories. There was one filed on September 13th, another supplemental inventory filed on November 21st, and I would call to Your Honor's attention that the appellant filed no formal objections to these inventories at the trial court. So these were not objected to by him. I understand he takes issue with them here, but at the time, there was no objections filed. There was no motion to clarify by the appellant on file as well seeking things. Are you saying these orders specified what was to be returned? Yes, Your Honor. So those inventories are incorporated by reference in the orders, in the 12A and September 22nd orders. And counsel didn't object? He did not file formal objections at the trial court. Did he file an answer to it? I don't believe so, Your Honor. Did he file an affirmative defense of impossibility because he didn't have them? To my knowledge, no defense of impossibility was filed. Your Honor, and this, I guess, your question is leading me to another point that I wanted to make here today, which is the lack of good faith on behalf of the appellant here. I think there's a meaningful difference if the appellant came here today and made an argument to Your Honors that, you know what, we showed up with three U-Haul trucks full of personal property. We've tendered them to the guardian and we're trying to comply with the trial court's orders, and yet the trial court is still holding us in contempt but won't tell us what more we need to turn over. I think there's a meaningful substantive difference between that situation and a situation where the contender simply sits on his hands and says, we don't know what to do. So you're asking us then to affirm completely. What are you asking us to do today? Your Honor, I would ask that the court uphold the orders and remand it to the trial court for a, may I finish, Your Honor? Sure. Remand it to the trial court in accordance with the 12-A order for a final prove-up on to whether Mr. Earhart had purged the civil contempt. But would you acknowledge that a specific sentence, a 30-day sentence, should not be a part of the civil contempt order? Your Honor, I understand that. I would acknowledge that. I know this is painful for you to acknowledge, I can see, but would you acknowledge it's not proper in a civil contempt case? Judge, I would acknowledge that the order could probably have better been written, and that certainly following the prove-up that should have taken place on 12-13, which if this is remanded for a final prove-up on whether Mr. Earhart had purged, that any future order be written in conformity with the case law that's been discussed here today.  Thank you, Your Honor. Okay, thank you. All right. Sarah, you may proceed. Good morning, Justices. My name is Sarah Costa-Howard, and I represent the late Mary Baldessari. I emphasize that, Judge, because this whole case has been a ruse. It's been a ruse on the trial court, and it has been a ruse here today. It is all about delay, stall, rather than give a dying woman her personal effects. That is why we are here today. This is all about a woman's photographs, personal belongings, jewelry, gifts given to her by her children. That is why we are here today, because Mr. Earhart refuses, and to this day has refused, to return those items to her. There is no doubt in this case that we have demonstrated that, once again, the war to show cause that I filed on behalf of Mary Baldessari, that Mr. Earhart had actually violated the court order by not returning very specific items. Those orders, judges, excuse me, those orders were very specific. In fact, some of those orders included language that Mr. Earhart himself agreed, things such as a cookbook, a cookbook, Judge, a cookbook, that he would not return. By the end of this case, Judge, we had even two additional months of time between the time the original civil contempt, indirect civil contempt order was filed. Did you handle the matter from its inception in the trial court? I came, excuse me, Your Honor, I came to the case in March, late March, early April of 2017. At that point, I was hired by Ms. Baldessari. They are just procedurally judged. Her children had filed a petition for guardianship. Mr. Earhart had filed a cross petition using the exact same physician's report indicating she was disabled. Mary hired me because at that time she did not feel that she was disabled. So I, she hired me to represent her in that matter. At that time, I originally filed a denial that my client did not feel that she was disabled. However, by the fall, and I apologize, Judge Nurse, the date is escaping me, but she did amend her petition and agreed that she was disabled. There was no need for a hearing. She actually answered in the affirmative and agreed that she was disabled and she was seeking to have her children be named as her guardians. So for Mr. Earhart to now stand here and suggest, excuse me, through counsel, Mr. Schmidt, that there was a trial that needed to be had, again, was part of the delay and bruise upon the court. I'm asking, Mr. Martin alluded to the fact that when the items were specified in the trial court, he represented there was no objection by Mr. Earhart or the counsel to the items at that time, and now this is surfacing later. Were you present at that part when he was soliciting? Yes, Judge, I was. In fact, that was part of the process. Your Honor, the record is quite clear. The number of times that we appeared before Judge Gibson to talk about items. In fact, in April, I filed an emergency petition for my client to receive some of these items, her clothing, purses, jackets, for her to wear. And you're saying there was never any objection on behalf of Mr. Earhart to the items at that time? Actually, Judge, there was an objection. Initially, there was objection to certain items. One of those items was the computer, the household computer that they all used, that contained all of the photographs that Ms. Baldessari had been seeking. They refused to turn that over because it was who owns it, who is the owner of it, was it joint property or not. But there was not an objection that they were not available. Correct. There were objections as to whose property it was and who it belonged to. Correct. But they did not say that those items were not available to be turned over. Correct. At no time, Judge, has Mr. Earhart ever said that it would be impossible for him to do that. There was no objection ever that he didn't know where they were. In fact, some of the items that were found and were part of a hearing on April 27th, again, as part of the record, Mr. Earhart actually acknowledges that he gave my client, a dying woman, empty jewelry boxes with his phone number inside. So the jewelry existed, but he chose to give her the empty box. Never said he didn't have it. That's what's in the transcripts before you're on. So there was never an objection that those items didn't exist. Even the photographs, Judge, and, I mean, whatever items, personal photographs, that there was solid testimony and evidence that was produced that they existed, that they were on a computer, he wouldn't turn over. And I – But you would agree that, I mean, the legal eyes need to be dotted and the T's crossed in order for a competitive sanction to be imposed, right? Yes, Justice Eichhorn. So, I mean, is this criminal? Is this civil? We have a determined 30-day sentence, which is certainly one of the sticking points here as to whether or not that's criminal or civil. Yes, Judge, if I may. Judge, there's no question that this is an indirect civil content. The title, the language that Judge Gibson consistently used, that this is coercive. Please, I mean, at one point, Judge, when you read the record, he's almost begging, just give the woman her stuff back. Your Honor, if I may, I guess I would say this. You all have asked several times about a remedy or what we would see. Judge, I can see nothing. With all due respect, as an attorney, we rarely can see. But I would suggest, Your Honor, if you feel that the final court order is incorrect, affirm Judge Gibson's – On the contempt part. On the contempt part. And seek a new, a remand instruction for better language. I would say this as to the 30 days. We didn't even get there, Judge. So for me, this is more of an anticipatory nature that this appeal was even filed. We didn't even get there. And the fact that Judge Gibson tried begging, asking them, I'm still going to give you seven more. Come on, do the right thing. It's all he wanted was this woman to get her things back. Both you and your co-counsel here have talked about an anticipatory. Once there is a sentence imposed, it is an order that we can consider. It's not anticipatory. It is an order we can consider. There is nothing in any of that September order that says, I'll reconsider this if the purge is taken – if the purge is accomplished. So we have jurisdiction, and it's not anticipatory. The other question I would like to pose to all three counsel, and I'll give you a chance to answer for you and your co-counsel, if these inventories are so important, the one of 913 and the supplemental of 1121, although we have access to the record, the easiest way to give us the information is to put it in the appendix. You have pages and pages and pages of transcript, no appendices. Why didn't you put these inventories in? Because they don't exist? Oh, absolutely not, Judge. Because they're not clear, they wouldn't help us? No, Judge. In no way, shape, or form have we shied away from the bad facts and the bad orders perhaps that were written not very well in this case. We haven't shied away from anything. Every fact – I mean, honestly, Judge, if you take a look at our statement of facts, Mr. Earhart's brief seems to not include several months of what went on in this case. We did not – if I may, Judge, I don't – I mean, to be honest, Judge, I'm not really sure. I don't think we – I can speak for myself and the co-counsel. The assumption is when it's part of the record, it's part of the record. Or the transcript is part of the record, too. Well, it wasn't, Judge. Actually, we had to file a supplemental record because Mr. Earhart's counsel failed to include a significant number of court dates. Well, something that isn't part of the record can't go in your appendix, so you must have done that by order. But the point I'm making here is his entire argument today, or most of his argument, and his argument in his brief is we never knew what to get back. And if there were inventories, it seems pretty logical that those should have been given to us not just in the record, but if you're going to do a 50-page appendix, that maybe it could be there. That's my suggestion for future appearances here, if you would. Thank you, Judge. I will then duly note it. Thank you. Thank you, Ms. Hart. All right. Mr. Schmidt, you may address the floor, and then finally, Butler. Thank you, Your Honor. In terms of the court's question, page 27 of our brief talks about the fact that the inventory, the supplemental inventory, wasn't identified, wasn't attached. And if you look at the second paragraph of our brief, page 27, we essentially had to guess. There were two inventories that were being thrown around. We did object. Let me make this clear. At the hearing, we objected to the use of the inventory because, as indicated in our brief, there's no indication that there was a person who actually did this. We don't know who the author is. It came from my colleague. But we don't know who actually put it together. Aside from the issue of the author, did you counsel allude to the fact there was no specific objection to the nature of the items that were listed? Did you interpose an objection at that time and say, we can't comply, these items don't exist, we don't know where they're at? Did you say anything along those lines? Along those lines, specifically, no, Your Honor. I did say that this is inappropriate because it's a list of an inventory, it's not missing items, and it doesn't connect anything to what was in the house after the period. Some of these predated. One of the things said by my colleague was that there was some kind of a letter that predated the contempt hearing, which was supposed to be notice of what the items were. The fact of the matter is there's not a supplemental inventory because one was never created because it can never be established what was in that list. Well, it looks like, you know, Arne, you've dodged the issue. If you're the trial judge and you're counsel and somebody presents a list, erroneous or not, isn't it incumbent upon the other side to make some kind of objection to what's on the list? And we made the comment, Your Honor, but presented with that, how do we do that first of all and preserve our Fifth Amendment rights? Because this was a criminal proceeding. It was a criminal proceeding. At that point in time when the inventories were being prepared? We can look back and see what it is now, Judge. Based upon the 30-day sentence. Your Honor, there had been hostility that was shown. There was no hostility. You have petitions that are filed specifically for indirect civil contempt. And that's what sets this whole thing in motion on inventories. Then these inventories are generated. At that point in time, it's not criminal contempt. They're generated for compliance. Are you saying that every item on those inventories is contested? Your Honor, with respect, they weren't generated because of the contempt. They predated it. They had nothing to do with the rule to show cause hearing. Those documents preexisted and were probably part of some settlement discussions. They were not created for the purpose. The contempt order is 922.17. Right. And at that point, now your client knows he has been held in contempt, and we don't have a sentence yet, I don't think, or maybe we do. But for sure, the 913, a document dated 913 called an inventory, where it came from, you had that, correct? Your Honor, at that time, we did. And there was nothing that said at that time, before 922, in your mind that said you couldn't speak to the issues on that inventory, correct? But we did speak to it, Your Honor. The hearing, we said. Did you write anything? No, I did not write anything. Did you file a formal objection? No, I did not. I objected during the hearing. But you lost an opportunity. Did you answer the petition for rule to show cause? No, Your Honor. Okay. You could have. There was no issue of your client's rights? Well, there was, Your Honor. How? Because we knew there was an ongoing criminal investigation that they had instigated. And in fact, we. Where was that? In the Bloomingdale Police Department, and it's in the record. We knew. And we had to stop the citation to discover assets because we were told by a detective at the Bloomingdale Police Department that there was an open investigation. The detective called Mr. Earhart. I returned the call and said, we can't talk to him. I got Mr. Cornelius involved because I'm not a criminal practitioner. So we did know at that point. And indeed, in terms of the ruse, the ruse is this. Well, wait. You weren't worried about this issue of criminal contempt and your client's rights. You were worried about what might happen out of a separate independent investigation. At the first instance, it was the separate independent investigation that Thomas and Denise instigated that caused me concern. Even though those transcripts there have a lot of testimony from your client about, well, these were put in boxes by Mary and me because she wasn't going to use them anymore. She stopped baking a few months ago. And we put those out in the garage. You weren't worried about that kind of stuff? Your Honor, if you're asking me whether I'm worried, I can give you chapter and verse on the things that keep me out. I'm Catholic. I worry all the time. That makes two of us. Okay. But, Your Honor, Your Honor does point to the fact that things on that inventory, may I finish? Yes. We know are wrong. The vehicles. You know, the vehicles, really, Your Honor? We have to return the vehicles? The guardian ad litem has the vehicles. They knew that. And they repeatedly submitted a document. They knew to be incorrect. Baking equipment, R-130 and R-131, items 36, 39, 40, they were donated. Cooking equipment, R-141 to 143, item 41 on their list, donated. Black mixer, return, R-143 to 145, that's item 38. Silver coin collection, testimony that Mary got rid of it. R-148, mentioned? No, not at all. A ruse? Jewelry, nine. Turned over, R-140, 150. Cookbooks, handed over, A-100, 101. Photos and additional jewelry, given to Mr. Mabora's office, my predecessor counsel, A-106. To suggest that it wasn't discussed or to suggest that that's an accurate list or a list that was creative as a result of the rule is inaccurate. I mean, again, just look at the dates. It's separate apart from what was said on the transcript, but just look at the dates. You have the petition filed on August 9th. The rule issues on August 11th. Then you have this first inventory on September 13th. What a coincidence that the rule relates to give me back my property and I get an inventory of the property that theoretically they want back. Then the trial court finds indirect civil contempt on September 20th, and then a supplemental inventory is done on November 21st, showing the property that's still missing, which are all referenced in the contempt orders. I mean, I think it strains credulity to say that these inventories weren't prepared in some respect in relation to the rule. And they still included a truck that they knew still existed was in the hands of the guardian of Atlanta. I'm not going to discuss the specific items. I'm just talking about you had made the statement that these were not prepared in any way, shape, or form in relation to the rule. These items were prepared at the beginning and were later modified, but were prepared at the beginning relating to settlement discussions that were had. They weren't prepared for the rule. Okay. Thank you. I'd like to thank all counsel for the quality of their arguments. I'm here this morning on this interesting, somewhat complicated case. The matter will be taken under advisement. And, of course, a specific written decision will issue on this matter in due course. At the moment, we will stand in recess to prepare for the next case. Thank you.